I'm not sure if I'm pronouncing that first one right, but I'm sure I'll be corrected if I'm not. Miss Virginity. Am I pronouncing your name, right? Yes, you are. Thank you, Your Honor. Klein nectar. Klein connector. Yes. Fine. Next. Yes. All right. So if you'd like to. Oh, thank you. You don't have to, but you're certainly welcome. Thank you. You have reserved two minutes for rebuttal. So that gives you eight minutes out of the gate. Thanks very much. Tiffany Virginity Lynn Garner done for Gentile on behalf of appellant Suzanne Kleineck individually and as representative for the state of Richard Kleineck. This is a case about the ultimate bad faith on the part of village officials. The bad face of the village is memorialized by their action and having secretly. Didn't your clients show bad faith by changing the dimensions of the dock every time they made an application? No, Your Honor. While Pelley's take issue now with the what they contend are changes to the dimensions of the dock. That argument is a red herring, as stated in the declaration of Aaron to Kuhnion from First Coastal. The dock remained the same substantially in all applications from aside from the 2014 application, which was related to a variant, which I'm not speaking to. The 2011 and 2016 applications were in some substance almost identical. The only variations were due to requirements by the D.C. that precluded the floating dock from laying at the bottom. At low tide. In contravention to that requirement, the village did not allow what's called and referred to as chalking, which would eliminate the dock laying at the bottom. I'm not sure we need to get into the technical qualities of a dock. It seems to me that Judge Brown dismissed this case because he found that it was not right. And he did that because he found that there was no final order. So we have a number of different acts by the state, by the town. And so what are the final orders that you believe give you the standing you need to proceed? Sure, Your Honor. And I think, Judge Pooler, your recent opinion in Village Green at Sayville versus the town of Islip is instructive on this precise point. In that case, and I'll get to- Well, that case involved whether there was exhaustion. And we know that it was readily apparent from the actions that the town was saying no. Here, which is, I have a little trouble understanding the decision. Sure. I mean, the theory of the complaint. And when you filed suit, you had not gotten a final decision. I would disagree, Your Honor. Here, I think- On the last application, was there a final decision? The last application was the 2016 application. Was there a final decision? There was. And if I may, Your Honor- There was? Yes, there was. At the time you filed the complaint? Yes, there- I thought that it wasn't granted until sometime thereafter, after you filed the complaint. The application wasn't granted. But in 2016, when the client applied for a permit to build a dock, which conformed to the zoning code, the building inspector refused to consider it. Instead, the town attorney, just as in Village Green, sent a letter, and that is Appendix 324, that letter from the village attorney, stating that the building inspector had no authority- I'm sorry, there was a fourth application, right? 2019. 2019. Yeah, that's the one that- That was not decided. The only reason that the- Is that right? The 2019 application had not been decided when suit was filed. The 2019- It was filed when suit was filed. The 2019 application was only filed with the village, again, at their request. It was our position that it would have been unnecessary to file anything after the 2016- To build the dock. But your claims here are about 2011, 2014, and 2016, right? That's the damages you're seeking. Correct. The reason for the 2019 application was only because the Department of State requires a consistency review with the village. And in 2016, when the building inspector refused to consider the application stating that he had no authority to do so, we couldn't then submit the application to the Department of State because they only have six months to get an okay from the village. Since the village was not considering the application, it would have never- On the fourth application, now, all of a sudden, the dock is 75 feet. That's longer than any other application. Your Honor, it was always 75 feet. The 2016 application was also 75 feet. That's the one that finally was built. If you look at the actual permit for the dock, the dimensions are the same as the 2016 application. So it's not 75 feet. It's 75 foot long. The 2016 application was also 75 foot long. The only difference was that one of the floats was slightly less wide. The length always remained the same. But so you've got February 29, 2012, denial of your application from the planning board. Correct. And then you've got August 12, 2014, denial from the building department of an application. And then a September 2014 application for a variance, which is then denied in March of 2015. Correct. What our view is that each of those is a final order? Our taking claim and the final decision requirement focuses on two determinations. In 2011, the clinics applied to the planning board for a dock and for the board- That's just a simple question. So what is the final decision that you believe makes this right? You've got multiples to choose from. Sure. I'm going to point to two decisions that I believe are final decisions that make this right. The planning board made a final decision in 2011 that the clinics were not entitled to apply for a dock as a result of an open space easement and its purported conversion of their property to state parkland. And an article 78 was brought- I'm not even interested in article 78. I just want to know the final decisions that you believe make this right. So that was the first final decision. What's the second one? The second one was in 2016 when the clinics applied for the permit to build the dock, which conformed to the zoning code and didn't require a variance. And that was in response to the Supreme Court's determination that the village was required to issue a permit upon an appropriate application. That application was then made in 2016 and the building inspector refused to consider it, instead stating that he had no authority. And that was in a letter from the village attorney. You're saying that refusal to act is tantamount to a final decision. Yes, exactly how this court held in Village Green that if a dispute can ripen when a municipality uses unfair and repetitive procedures to avoid a final decision, it surely ripens. Whereas here, the municipality makes plain that it has reached a decision that by all counts it intends to be final. And the village here was saying, we don't have authority because we believe that this is parkland, and so we're not going to entertain any application. Not now, not never. But Judge, again, Judge Brown's order is very short. And basically, if you strip it away of its sort of clever Dickensian references, it basically says there's no final decision regarding the dock at the time you file it. And so you disagree with that? We disagree with that. All right. And so what you're saying is that we should send this back, say that it is ripe, and then you guys get to litigate. And at that point, there might be lots of defenses that are going to be problematic for you, including it seems to me we're on a race judicata kick. But there was no claim for damages made at any point prior to this federal claim, right? You didn't in the Article 78. You never sought damages there. No, because in the Article 78, the state court was still adjudicating our substantive right to the dock. Right, but in an Article 78, you can make constitutional claims. You can make claims for damages for a taking, right? You can. But you didn't. We did not. But this court under Nick held that you're not required to bring those constitutional takings claims in state court. Well, you're not required to exhaust state court remedies. That's what Nick said. And anyway, we don't have to resolve this now. You're just saying you get to fight another day in the Eastern District. Correct. These are all issues of fact. With respect to the 2011 and 2016 decision. Correct. That's all you're, you're not even concerned about the, what happens later in 2019? And the dock is actually built, isn't it? The dock is now built based on, so after, it was only after the commencement of this federal action, that the village then did a total about-face after hiring new counsel, Mr. Miranda, and announced at the pre-motion conference for the motion to dismiss it in the district court that was filed by the village, that they were going to be granting the permit. This was after 10 years. Right. But that moots out then your injunctive relief. So you're not seeking that anymore. We're not seeking injunctive relief. So now it's just about damages. It's just about damages. And our position is that having failed to follow state court adjudications,  and thumbing its nose at those state court decisions over a decade, the about-face in the context of this federal action, under the threat of federal liability, does not absolve that decade-long deprivation. Those damages still exist. So what would the damages be then? You want attorney's fees, right? Yes. For the time spent in Article 78? Yes. Okay. And then you also want some damages tethered to the loss of enjoyment of the property? Sure. Or the diminution in value of a property that should have been entitled to a dock and be waterfront, but wasn't because the town was relying upon- That would only matter if there were a sale or something, right? I mean, I don't see why the loss of the value of the property during that period of time wouldn't matter for your claim of damages, unless you're going to make an argument that they would have sold or they didn't sell because the value- I'm not sure how that- Well, I think that these are issues of damages and factual inquiries that weren't properly considered in the context of this motion to dismiss. However, I do think that in the context of a taking claim, there can be an evaluation of damages based on diminution, even if there is not a subsequent sale. The one point that I do want to make is that even up until the course of this federal proceeding, the village had withheld the fact that it amended its own village code in 2016. And prior to the mandamus petition that the Clonics had filed in state court, which resulted in Justice Palmieri ordering the building inspector to issue the permit- I mean, that might be relevant to the merits if you get there, but I'm not sure it relates to whether this was a final or right decision. It's indicative of the bad faith and the continuous changes- Well, under the futility exception to the finality requirement, that would also be applicable here. So it might be relevant to whether the 2016 decision not to decide should be deemed a final decision. Correct. Well, you've reserved two minutes for rebuttal. Let's hear from Mr. Miranda. Sure. Thank you. Thank you, Judge. Thank you. Good morning. Michael Miranda for the defendants' appellee. This is a case clearly of- that cries out for application of the final decision rule. As Judge Chin and Judge Cooler- So why are these not final decisions? It seems to me there's a planning board vote to deny the application February 29, 2012. Why not a final decision? That's what they went straight to Article 78 on, right? No. Well, they lost that Article 78. I'm so glad you brought that up. And in that 78, which is in the record at 934 AD 3rd 936, in that they made Judge Pooler's point. And that is they kept submitting different applications. And the second department said in that case, issued in 2018, that there were ample grounds to deny the variance. So they found in favor of the village. I'm just asking a simple question about final decisions. So there have been multiple applications, sure enough. But there is a decision in February 29, 2012. Your view is that that is not a final decision? Your Honor- They vote to deny the application? The reason I interrupted is because it was actually in 2011, respectfully. And at that point- No, 2011 is when the application is filed. The vote to deny the application is February of 2012. That's the zoning board of appeals decision that I just spoke of that was affirmed by the second department. The 2011 decision is, I believe- Why isn't the 2012 denial a right decision? A final decision that makes the claim right? Because it's not a final definitive decision by the village board. It was by the zoning board of appeals and then affirmed- No, it wasn't. That's the planning board's vote to deny the application. The planning board's vote to deny the application in 2012 was, I believe, the subject of the litigation. I don't know that it was presented to the district court that the 2012 decision was a final decision. I think the district court was just looking at the pending application, the 2019 application. And so I don't know that the district court addressed the argument as it's being framed now. Why shouldn't we send it back and say, consider whether the 2012 decision was a final decision that makes the claim right? Sure. Two answers to that, Judge Chin. Number one, the statute of limitations would have long expired. And number two, mootness. Look, those are defenses. They're not ripe, but it doesn't go to ripeness. And so what Judge Brown dismissed the case on was on the basis of ripeness because there's no final decision. It appears there might be final decisions. It might also be that there's real time bar problems, and there's race to Dakota problems, and mootness problems. You might have lots of other arguments, but they don't seem to be ripeness arguments. Well, there is a ripeness argument. There has to be a final definitive injury as set forth in the Village Green case and has been set forth by the teachings of this court. There was no final definitive injury as of the time of the complaint. The argument is that because of the delay, they lost the enjoyment of the property for that period. They couldn't use it quite the way they wanted to. Why isn't that? You may think it's not a good claim on the merits, but why isn't that a right claim? That wasn't even my response, Your Honor. My response was it's not in the complaint. It's not in the complaint, anything about enjoyment of life. This case is about attorney's fees, and attorney's fees under Your Honor's teaching in Lamar can't be a basis to find that a case is not moot. Either this case is not ripe in 2019, and in paragraph 37 of their complaint in the Eastern District, they said that this application in 2019 that you questioned my adversary about might be approved. If it might be approved, how do they satisfy the rules of final decision? Why would they continue to go and file different applications, as Judge Pooler said, if there was a final decision in 2012 or 2016? They didn't. At paragraph 37, they admitted that it could be approved. In fact, they had not even submitted their application to the village at that point. They didn't submit their application until two months later, as Judge Sullivan was saying, and then the village quickly approved it. The village quickly approved it. To have a final decision, there needs first to be a final application. In 2012, they didn't go to the Department of State. They recognized in 2019 that they had to go to the Department of State. That's what the village told them in 2016. They also, the village attorney, unlike Village Green, was very, very helpful here. At AIM 142, you'll see a letter from Chris Wagner, the village attorney at the time, explaining precisely what they needed to do to get approval. So bad faith is not involved here at all. I understand you're not deciding that here, but that's not an issue. Village Green had an element of discriminatory animus. That's not present in this case. Precisely. Precise. This is a pure and simple Fifth Amendment-taking case, Your Honor. And the other thing I would say, and we raised this in the extensive briefing, how is there even a taking here? How is there a deprivation of complete value? Yes, it's a defense, but why send this case back when there's no possibility of winning? And the 2012 application was not filed. Because it was decided on one ground. It was decided only on one ground, which is rightness. So, I mean, you're asking us to find alternative grounds to dismiss the complaint? I'm just asking Your Honors to look at the record here and the decision. I think you can assume we've looked at everything that you sent us. I'm just answering your question. I know you have, Your Honor. I know you have. I was just answering your question. So what Judge Brown said, there's no final decision regarding the dock. And then he says the application may have evolved. But it appears, from his own opinion, that there were earlier applications that were denied. And so I guess the question presents itself again. Why aren't those final decisions that create at least a remedy? Because as this argument started, they were all different applications. And some of them were incomplete. And, again, why would the— But that's not what Judge Brown found. Well, I think that's respected. I think that's addictive because he was focused on the 2019 decision. He was— That's the point. He was focused on the 2019. One could liberally construe the complaint, perhaps, as to assert claims based on the earlier denials. And I don't know that Judge Brown considered that. He may not have, but wouldn't that have been— And so you really are asking us to affirm on different grounds. In a way, in terms of the full breadth of the defenses here, in terms of mootness, yes, Your Honor. But I'm also saying it was superseded by their own applications, the numerous applications. I'm sorry to interrupt you. Yes, no, of course, Your Honor. But it does seem to me that at the time the complaint is filed, there is no 2019 application. That's right. The one that Judge Brown is focused on post-dates the complaint. Right. So it just seems strange to say that the application—there's no final decision on an application that didn't form the basis for the complaint. But their focus of the complaint, as one of the jurors pointed out, as one of you just pointed out this morning, it's not even clear that they're relying on the 2012 decision. And on top of that, it would have been superseded by the subsequent applications. And while they didn't submit it to the village, they submitted— So let's assume hypothetically. Yeah. I file an application for a variance to allow me to enjoy a piece of property, and it's denied. And then I file another one, and it is denied. And I file another one, and it's denied. And I finally say, these guys are just monkeying around with me. This is a taking under the Constitution. I'm bringing an action in federal court under the Constitution, under the takings clause. Why—you're saying I don't get to do that because I can apply again? Well, what they did by their own admission is apply differently. They created different applications. And according to Nick, the taking is— But that doesn't mean that they don't have a claim with respect to the way it was before, does it? Well, I think it does because they've superseded it, and they weren't focused on the 2012 application. Do you have law to support that? Not off the top of my head, Your Honor. But I believe it would—clearly it would have to be time-barred. There's no equitable— Again, that goes— Yes. I think there's—I mean, I think there are clearly going to be time-bar issues here, and maybe a lot of others, too. The only issue is on the one ground that was relied on by Judge Brown, is there enough here to support the existence of a right to claim? So, anyway, I think we get the arguments. Let's hear from Ms. Brigenti for two minutes of rebuttal. Thank you, Your Honor. Counsel, before you give your breath up, why did you bring the federal action in October 2019? Is that when you did it? Yes, Your Honor. Why did you bring that when you knew the fourth application was pending? That's my question. That's what we're all asking. Your Honor, because at the time that we brought the federal action, it was not clear that the village was ever going to grant the application from 2016 that had still been pending. You had won before the appellate division in June 2019, didn't you? Yes, we had. But despite that, and despite all of the prior state court— You just said that the 2000 application was still pending, so you didn't have a final decision on the 2016 application? No, there was an adjudication, but it was still with the village, and they never acted on it. You said the application was still pending. Why? Pending meaning— How could it have been right? It was right because the application was submitted, and the state court adjudicated that was a proper application, and that the building inspector should have acted on it, but failed to, and mandamused the building inspector to then refer it to the site. Do you allege in the complaint that—well, there's one claim in the complaint, first claim, that's it. Do you ever put on the defendant's notice that you actually have three claims, one based on the 2011 application, one based on the 2016 application, and then one based on whatever the last one was? Do you allege that? Absolutely. Where do you allege that? So the— And do you allege damages from loss of the enjoyment of the property? I believe we do, Your Honor. Where do you allege that? I will go back to the complaint, but for example, at—just give me one moment to look at the exact precise allegations that I want to refer you to. I mean, you're about to run out of time. I'm sorry, but if you go to the record at A20, A21, it goes through each of the state court adjudications that— From what I understand, you have all these detailed applications. Do you ever say we have three claims, one based on the 2012 rejection, one based on the 2016 implied rejection, and then one based on the latter one? Do you ever articulate it in that way? Not in the precise order that you state— It was all lumped together, right? And so the district judge really didn't know that you were serving three different claims? I don't think that that's a fair conclusion based on a reading of the complaint in its totality. I think that it was very clear that our position was that from the moment that the village refused to grant the permit in 2011, that was a constitutional taking, and thereafter in 2016 again, when it refused to— But you don't allege that in the complaint? Yes, we do. Okay. In page A34 of the appendix, it speaks to the 2011 application, paragraph 96, and that the planning board then also filed an application with the planning board, paragraph 97, seeking to modify the covenants. And then 98, it claims that the defendants came to an agreement to deprive the clinics of their dock and refused to grant the 2011 application, and despite knowing that this was a permitted use within the village, paragraph 10. And then it goes through the history of how there were due process violations during the— I understand that you lay it all out. My only question really was, I don't think it says we have three claims. In fact, you have first claim, and then that's it. So that's all I am suggesting. I'm not sure what we do with it. Okay, I would just— Thank you. Okay. Okay, well, thank you both. We will reserve decision. That concludes the cases on our argument calendar. We have one other case that is on submission. We'll reserve on that one as well. And so I will ask Ms. Beard to adjourn court. Thank you, Mr. Chairman. Court is adjourned.